*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0266p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MICHAEL L. MEEKER,

*Defendant-Appellant.*

No. 03-1873

>

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 00-00218—David W. McKeague, District Judge.

Argued: December 1, 2004

Decided and Filed: June 17, 2005

Before: DAUGHTREY and GILMAN, Circuit Judges; RICE, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, WESTERN DISTRICT OF MICHIGAN, Grand Rapids, Michigan, for Appellant. Joan E. Meyer, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, FEDERAL PUBLIC DEFENDERS OFFICE, WESTERN DISTRICT OF MICHIGAN, Grand Rapids, Michigan, for Appellant. Jennifer L. McManus, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge. Michael Meeker employed a fraudulent investment scheme to bilk 76 people and two small businesses out of nearly $3.8 million during an eight-year period. Meeker was charged with mail fraud, in violation of 18 U.S.C. § 1341, and interstate transmission of funds obtained by fraud, in violation of 18 U.S.C. § 2314. After pleading guilty, Meeker was sentenced to 84 months in prison and ordered to pay $3,770,445.24 in restitution.

On appeal, Meeker argues that the district court erred in (1) sentencing him on the basis of letters from victims that had not been disclosed to him, (2) failing to provide reasonable notice that

_____
[*]The Honorable Walter H. Rice, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

the court was considering an upward departure from the United States Sentencing Guidelines, and (3) departing upward six offense levels in his sentence pursuant to § 2F1.1 of the Sentencing Guidelines. Meeker also contends that his sentence should be vacated because his defense counsel provided ineffective assistance by failing to object to the district court's reliance on the undisclosed letters and to the lack of reasonable notice with regard to the upward departure. For the reasons set forth below, we **VACATE** Meeker's sentence and **REMAND** the case for resentencing in light of *United States v. Booker*, 125 S. Ct. 738 (2005). As to the other errors raised by Meeker, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

In October of 1989, after having been a partner for several years in a small tax-preparation service, Meeker decided to form his own company, Meeker Tax and Accounting Services. Many of his loyal clients at his previous firm continued to use his services, and he also sought out new business. Initially, Meeker's company provided only income tax services. He claims, however, that once "the word got out" about his success in investing his own money, a number of his tax clients began to ask for investment advice from him as well. Soon, instead of simply providing investment advice, Meeker was actively investing his clients' money for them. This is when his defalcations began.

Meeker told the clients who wanted him to invest their funds to write a check to his company, which he then deposited into his Meeker Tax and Accounting Services account at Old Kent Bank. In this manner, Meeker collected over $5 million from 76 individuals and two small businesses over an eight-year period of time. Instead of investing the money in certificates of deposit, mortgage loans, Treasury bills, or the stock market as he had told his clients that he would do, Meeker kept the money in his business account or transferred it into his personal investment account at Robert W. Baird & Company, Inc. Some of the money that Meeker kept in his business account was used to pay disbursements requested by his clients (approximately $1.3 million), but the bulk of the money (approximately $3.8 million) was spent by Meeker. All the while, however, Meeker was sending falsified quarterly statements to his clients showing that their investments with him were increasing in value.

Exactly what happened to the money that Meeker fraudulently diverted from his clients' accounts is unclear. The bankruptcy proceedings involving Meeker's estate revealed that his total net worth was down to approximately $367,000. FBI investigators have speculated that the money was consumed by Meeker's business and living expenses, bad personal investments, and embezzlement by one of his former employees. Meeker also had a gambling problem, which resulted in losses of at least several hundred thousand dollars.

When one of Meeker's clients became suspicious and called the authorities, an FBI investigation was launched. After retaining an attorney, Meeker cooperated with the investigators, insisting that he had not intended to defraud his clients, but found himself "robbing Peter to pay Paul" when his investments went bad. Meeker was subsequently charged with mail fraud, in violation of 18 U.S.C. § 1341, and interstate transmission of funds obtained by fraud, in violation of 18 U.S.C. § 2314. After pleading guilty to the charges, Meeker was sentenced to concurrent prison terms of 60 months for mail fraud and 84 months for interstate transmission of funds obtained by fraud. He was also ordered to pay $3,770,445.24 in restitution to his victims.

The Presentence Report (PSR), which was reviewed by the district court and both parties prior to sentencing, recommended a Guidelines range of 51 to 63 months. It also stated that the probation office had "no information concerning the offense or the offender which would warrant a departure from the prescribed sentencing guidelines."

Meeker's sentencing hearing was scheduled for Monday morning at 10 a.m. on March 12, 2001. Late in the afternoon on the Friday before the hearing—at approximately 4:45 p.m.—the district court faxed a letter to counsel for both sides, informing them that it was considering an upward departure from the Sentencing Guidelines. In its entirety, the district court's letter stated as follows:

> The parties are hereby placed on notice that under United States Sentencing Guidelines ("U.S.S.G.") § 6A1.2, Application Note 1, the Court is considering an upward departure from the sentencing guideline range in this case. Such departure would be in accordance with U.S.S.G. § 2F1.1, Application Note 11.

At the sentencing hearing, the district court considered and ruled on objections from both the government and Meeker with regard to the PSR. The court also reiterated that it was considering an upward departure from the Sentencing Guidelines pursuant to § 2F1.1 (2001), Application Note 11(c) and (f). (Sentencing Guidelines § 2F1.1 has subsequently been deleted by consolidation with § 2B1.1.) Application Note 11(c) provided that the district court could depart upward where "the offense caused reasonably foreseeable, physical or psychological harm or severe emotional trauma." Application Note 11(f) permitted an upward departure where "the offense involved the knowing endangerment of the solvency of one or more victims."

By the time of the sentencing hearing, the district court had received approximately 30 letters from the victims of Meeker's fraud, describing the effect that his crime had had on them and their families. In discussing whether an upward departure in Meeker's sentence was appropriate under Application Notes (c) and (f), the district court stated that it had

> reviewed all of the letters that the Court has received from the many victims of this crime, and, frankly, it was the Court's review of these letters that led the Court to question whether the total amount of loss and the adjustment for the abuse of a position of trust adequately took into account the harm that had been caused by this offense for purposes of determining a fair and just case [sic].

The court specifically mentioned 16 of the letters in explaining why it had concluded that Meeker's crime was "a special or unusual case" that warranted an upward departure. Only two of the letters referenced by the district court at sentencing had been previously provided to Meeker and the government, but the parties appear to have had access to two of the other letters reviewed by the court but not specifically referenced by the judge at the sentencing hearing.

After considering the arguments on the issue from both sides, the district court determined that an upward departure of six offense levels was warranted in Meeker's case. At no point during the hearing did Meeker's retained counsel protest the district court's consideration of the letters that Meeker had been unable to review prior to the sentencing hearing. Meeker's attorney also failed to object to the timing or content of the district court's notice that it was considering an upward departure. And, despite Meeker's explicit request, his attorney failed to file a timely appeal from the sentence imposed by the district court. After new defense counsel was appointed, the district court granted Meeker's motion under 28 U.S.C. § 2255, permitting Meeker to file a delayed notice of appeal. He has timely done so.

## II. ANALYSIS

Meeker argues on appeal that the district court committed several errors in conducting his sentencing hearing. Because we conclude that we must vacate Meeker's sentence and remand his case for resentencing in accordance with *United States v. Booker*, 125 S. Ct. 738 (2005) (see Part II.C.1. below), Meeker will now receive a new hearing before the district court. We address Meeker's challenges to his earlier sentencing hearing, however, in order to provide guidance to the

district court on resentencing.  *See U.S. v. Yagar*, 404 F.3d 967, 970 (6th Cir. 2005) (reviewing the defendant's remaining claims because the district court would have to consider them on remand).

**A.      The district court did not commit reversible error in failing to provide Meeker with copies of all of the victim letters**

Meeker contends that his sentence should be vacated because the district court improperly relied upon letters from victims that were not provided to him prior to his sentencing hearing.  *See United States v. Hayes*, 171 F.3d 389, 395 (6th Cir. 1999) (remanding for resentencing where the district court sentenced the defendant based upon undisclosed victim letters).  Because Meeker did not object to the district court's use of the letters at his sentencing hearing, however, his appeal must be analyzed under the "plain error" standard of review provided by Rule 52(b) of the Federal Rules of Criminal Procedure.  *See United States v. Leachman*, 309 F.3d 377, 380 (6th Cir. 2002).

Rule 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  The Supreme Court has formulated a four-part test to guide the courts of appeal in determining when Rule 52(b) should be employed to correct an error by the district court: "Under that test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights."  *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (citation and quotation marks omitted).  Where all three of these conditions are met, "an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.* at 467 (citation and quotation marks omitted).

*1.      The district court committed error*

In support of his argument that the district court committed plain error in relying on the undisclosed victim letters, Meeker points to Rule 32(i)(1)(C) of the Federal Rules of Criminal Procedure, which requires that, at sentencing, the court "must allow the parties' attorneys to comment on the probation officer's determinations *and other matters* relating to an appropriate sentence."  (Emphasis added.)  In addition to "the right to review the presentence investigation report, the right to review other information relied on by a court at sentencing is implicit in the adversarial scheme created by Rule 32."  *Hayes*, 171 F.3d at 392.

The government does not dispute Meeker's claim that, prior to his sentencing hearing, he was unable to review most of the letters that were considered by the district court.  And, in determining that an upward departure was warranted, the district court frankly admitted that "it was the Court's review of these letters that led the Court to question" whether the Guidelines range recommended in the PSR was adequate.  The district court's failure to provide these letters to Meeker prior to the sentencing hearing thus runs afoul of the requirements of Rule 32, a procedural rule that the Sixth Circuit has recognized as "protect[ing] the right to due process by requiring disclosure of most information relied upon at sentencing."  *Hayes*, 171 F.3d at 392.  Because the district court's actions were "clearly contrary to established rules of law," the court committed error.  *United States v. Leachman*, 309 F.3d 377, 386 (6th Cir. 2002); *see also Hayes*, 171 F.3d at 394 ("Relying on the letters without providing them to the defense plainly violated the procedures required by Rule 32.").

*2.      Meeker's substantial rights were not affected*

An appellate court may not exercise its discretion under Rule 52(b) to correct an error, even where the error is plain, unless it is shown that "substantial rights" of the defendant were adversely affected.  *United States v. Olano*, 507 U.S. 725, 734-35 (1993).  This means that "a defendant ordinarily must demonstrate prejudice as a result of the error."  *United States v. Lowenstein*, 1 F.3d 452, 454 (6th Cir. 1993) (citing *Olano*, 507 U.S. at 735).  Meeker insists that he was prejudiced by

the district court's error in the present case because, if he had been made aware of the contents of the letters, "it is likely that a meaningful reply to the specific comments made in the letters could have been made."

In his brief, however, Meeker does not suggest how the evidence contained in the letters, essentially describing the emotional and financial impact of Meeker's fraud on his victims, could have been effectively rebutted by his defense. Meeker relies on this court's decision in *Hayes* to support his contention that he need not demonstrate on appeal how he would have benefitted from the district court's disclosure of the letters in advance of his sentencing hearing. 171 F.3d at 394 ("The government, however, faults Hayes for failing to specify *how* he would have responded to the letters had he received notice of them. We are not sure how he can be expected to do so.") (emphasis in original).

But Meeker ignores a critical difference between his case and that of the defendant in *Hayes*—the fact that Meeker has had access to all of the victims' letters in preparing his appeal. *Cf. Hayes,* 171 F.3d at 394 ("The letters are not part of the record of this case, and so far as we are aware Hayes and his attorney have yet to see them. . . . We will not insist that Hayes rebut evidence he has never seen in order to establish that he was prejudiced by the district court's reliance on that evidence."). In contrast, where a defendant has had an opportunity to review the evidence relied upon by the district court, an explanation of how the defendant was prejudiced is required. *See United States v. DeBardeleben*, 740 F.2d 440, 447 (6th Cir. 1984) (finding no prejudice where defendant did not "suggest what rebuttal he could make other than his blanket denial"); *United States v. Nappi*, 243 F.3d 758, 770 (3d Cir. 2001) (remarking that "it is significant that defense counsel has not provided any indication as to how, if given the proper notice and opportunity to comment, he could have challenged the information in the report").

There seems to be little that Meeker could have done to effectively rebut the heart-wrenching descriptions of his victims' emotional distress that were recounted in many of the letters. Because this evidence was "essentially irrebuttable," *Hayes*, 171 F.3d at 394, even if it had been disclosed to him in advance of his sentencing hearing, Meeker can show no prejudice warranting correction under Rule 52(b). *See United States v. Patrick*, 988 F.2d 641, 648 (6th Cir. 1993) (concluding that there was no prejudice where "it [wa]s difficult to see what evidence or arguments such a disclosure would have prompted [the defendant] to offer"); *see also United States v. Carey*, 382 F.3d 387, 393 (3d Cir. 2004) (finding that the defendant was not prejudiced where the district court relied upon undisclosed evidence at sentencing because under the "circumstances, the likelihood of effective rebuttal [wa]s extremely slim").

At oral argument, though, Meeker claimed that he could have used his knowledge of his clients' finances, which he gained while preparing their income tax returns, to attempt to discredit the factual statements of those victims who wrote letters declaring that they had lost their entire life savings and were forced to live in poverty as a result of Meeker's crime. *See Hayes,* 171 F.3d at 394 (observing that "the letters in this case contain factual assertions and therefore are not the type of evidence that is 'essentially irrebuttable'"). Meeker has not directed our attention, however, to any allegedly untrue factual statements contained in the letters. *See United States v. Stevens*, 851 F.2d 140, 145 (6th Cir. 1988) (finding that there was no prejudice where the defendant was not allowed to review his PSR before sentencing because the it contained no inaccurate information); *Nappi*, 243 F.3d at 771 (observing that "[i]mportantly, defense counsel has made no suggestion that the information in the report was inaccurate or false, or that the Court mischaracterized any of the information it cited").

The government argues that Meeker was not prejudiced by the district court's failure to allow him to review the letters because there was additional evidence in the record to alert Meeker to the fact that the sentencing court would consider the financial impact of his crime on his victims. *See*

*Patrick*, 988 F.2d at 648 (finding that because cumulative evidence existed, the defendant "was presumably prepared" and "already had an adequate incentive to present any evidence or arguments he could"); *cf. Hayes,* 171 F.3d at 395 (concluding that the defendant was prejudiced because there was no evidence "that the victim letters relied on by the district court were cumulative of other evidence properly before the court"). The PSR in the present case contains a five-page list of the victims' names and the sums of money lost by each. Meeker further possessed four of the letters reviewed by the district court, all of which recounted the significant emotional and financial harm experienced by the victims. He also was the personal accountant for most of his victims, making him uniquely aware of the financial repercussions of his fraud.

The evidence not disclosed to Meeker is therefore "of the same character, allows the same inferences, and, most importantly, is subject to the same arguments in rebuttal as evidence in the record of which the defendant is already aware." *Patrick*, 988 F.2d at 648-49 (holding under similar circumstances that the district court's reliance "on matters outside the record constitute[d] harmless error"); c*f. Hayes,* 171 F.3d at 391, 395 (finding that the defendant was prejudiced where "neither [the defendant] nor his attorney knew that the letters described by the court existed" and therefore "had no notice that 'victim impact' would be a factor at his sentencing hearing—the presentence report listed only the bank as the victim and mentioned that all the money had been recovered"). In sum, despite the district court's error in failing to disclose the letters relied upon at sentencing, we will not use our discretionary powers under Rule 52(b) to correct the error because Meeker has failed to demonstrate that he was prejudiced.

Moreover, even if we were to have concluded that the district court's error was prejudicial to Meeker's substantive rights, we would still have the discretion to elect not to vacate Meeker's sentence. *See United States v. Young*, 470 U.S. 1, 15 (1985) (warning that "the plain-error exception to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result") (citation and quotation marks omitted). Because we find nothing inappropriate about Meeker's 84-month prison sentence (see the discussion in Part II.C. below), we conclude that no miscarriage of justice has occurred in the case before us.

**B.     The notice provided to Meeker that the district court was considering an upward departure to his sentence was not inadequate**

Meeker also contends that his sentence should be vacated because the district court failed to provide him with adequate notice that the court was considering an upward departure from the Sentencing Guidelines. *See Hayes*, 171 F.3d at 395 (remanding for resentencing because the defendant received "no notice that 'victim impact' would be a factor at his sentencing hearing"). Because Meeker failed to object to the adequacy of the district court's notice at his sentencing hearing, his claim may be reviewed only for plain error pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure. *See United States v. Leachman*, 309 F.3d 377, 380 (6th Cir. 2002).

Meeker's claim of error is based on Rule 32(h) of the Federal Rules of Criminal Procedure, which requires that

> [b]efore the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

The Sixth Circuit has held that Rule 32 "protects the right to due process." *Hayes*, 171 F.3d at 392. A sentencing court that fails to provide reasonable notice of its intention to depart from the

Guidelines range therefore commits plain error. *See Leachman*, 309 F.3d at 386 (defining plain error as actions "clearly contrary to established rules of law").

Meeker claims that the district court's notice was unreasonable in two respects. First, he contends that the fax from the district court did "not provide many business hours to prepare" for the hearing because it was received at 4:45 p.m. on a Friday, with Meeker's sentencing hearing scheduled for 10 a.m. on the following Monday. Although we agree with Meeker that the better practice is for the sentencing court to give the defendant as much notice as practicable that the court is considering an upward departure, we conclude that the district court's notice in the present case was sufficient. We reach this conclusion on the basis that the amount of time required for a notice to be "reasonable" under Rule 32 is a context-specific question. *See United States v. Nappi*, 243 F.3d 758, 762 (3d Cir. 2001) (holding that a determination of whether to remand a case for resentencing "requires an assessment of the gravity of the error in the context of the proceedings").

If the issues are particularly complicated or the ground for upward departure is one that was not reasonably contemplated by the defendant, then more time is necessary. *See Hayes*, 171 F.3d at 391-95 (finding inadequate notice where the court announced at the sentencing hearing that it was considering victim impact, where there was no cumulative evidence suggesting that this was a possibility, and where "neither [the defendant] nor his attorney knew that the letters described by the court existed"). In contrast, if cumulative evidence otherwise exists in the record, then the defendant is already on notice and less preparation time is necessary. *See United States v. Patrick*, 988 F.2d 641, 647 n.7 (6th Cir. 1993) (noting that the Supreme Court "did not even go so far as to require notice in advance of the sentencing hearing, but rather left open the possibility that the notice requirement might be met simply by notice at the hearing"); *see also United States v. Hernandez*, 251 F.3d 1247, 1252 (9th Cir. 2001) (finding that the notice given by the district court "at the beginning of the sentencing hearing" was not plain error, even though "neither the presentence report nor the government's sentencing memorandum identified factors warranting departure from the Guidelines").

In addition to the timing of the district court's notice, Meeker also objects to the notice's content. He claims that the district court's statement that it was considering an upward departure "in accordance with U.S.S.G. § 2F1.1, Application Note 11" failed to "identify specific factors as the basis for a departure," which allegedly prevented him from preparing effectively for the hearing. Application Note 11 provided six examples of possible grounds for an upward departure:

    (a)    a primary objective of the fraud was non-monetary; or the fraud caused or risked reasonably foreseeable, substantial non-monetary harm;

    (b)    false statements were made for the purpose of facilitating some other crime;

    (c)    the offense caused reasonably foreseeable, physical or psychological harm or severe emotional trauma;

    (d)    the offense endangered national security or military readiness;

    (e)    the offense caused a loss of confidence in an important institution;

    (f)    the offense involved the knowing endangerment of the solvency of one or more victims.

Meeker argues that the notice was inadequate because the district court's letter did not indicate which of the six factors the court intended to rely on. Four of the listed grounds for departure, however, are clearly inapplicable to Meeker's case. As for the two remaining grounds, his counsel could easily have anticipated and been prepared to argue that an upward departure was

inappropriate on those grounds. This is unlike a situation where a defendant is notified that the court is considering an upward departure, but receives no indication of what factors the court may be considering. *See Burns v. United States*, 501 U.S. 129, 136-37 (1991) ("Because the Guidelines place essentially no limit on the number of potential factors that may warrant a departure" if no ground is specified, a defendant may be forced to try "to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative.").

Here, the PSR contained a five-page list of the victims' names and the amount of their financial losses. Meeker could therefore have reasonably anticipated that the court was considering a departure under Application Note 11(f)—"the offense involved the knowing endangerment of the solvency of one or more victims." Similarly, Meeker had in his possession four of the victim letters, wherein their authors described the emotional impact that Meeker's fraud was having on them, suggesting a likely departure under Application Note 11(c)—"the offense caused reasonably foreseeable, physical or psychological harm or severe emotional trauma."

At the heart of Rule 32's notice requirement is the principle that a defendant should be sentenced only after "focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence." *Burns*, 501 U.S. at 134. We conclude that the notice provided to Meeker was sufficient to permit his attorney to meaningfully comment on the upward departure being considered by the district court. Meeker's attorney walked the court through each of the sentencing calculations that had already been applied to Meeker's base offense level and argued that because his sentence had already increased from no jail time to a "substantial time of incarceration, . . . the guidelines take into account and adequately cover Mr. Meeker." The lengthy comments by the government's attorney at sentencing, referring to his having "research[ed] this over the weekend," also suggests that notice was sufficient to ensure that Meeker's sentence was the product of "focused, adversarial development" as mandated by *Burns*, 501 U.S. at 134. *See United States v. Callan*, No. 99-5934, 2001 WL 1320841, at *15 n.6 (6th Cir. Oct. 15, 2001) (unpublished) (finding that "notice given at the outset of the sentencing hearing is sufficient where defense counsel has a meaningful opportunity to comment").

Even if we were to conclude that the district court's notice was inadequate, Meeker was still not prejudiced because the evidence supporting an upward departure was essentially irrebuttable, as discussed above. *See United States v. Nappi*, 243 F.3d 758, 766, 770 (3d Cir. 2001) (finding no prejudice even where "the Court effectively blind-sided [the defendant]'s counsel with the document, and completely foreclosed his ability to respond meaningfully," because there was no "indication as to how, if given the proper notice and opportunity to comment, he could have challenged the information"); *United States v. Lowenstein*, 1 F.3d 452, 454 (6th Cir. 1993) (holding that where the "defendant [wa]s unable to identify any prejudice suffered due to the lack of notice, . . . any error committed by the district court did not rise to the level of plain error").

**C.     The district court committed plain error in sentencing Meeker because it failed to treat the Sentencing Guidelines as advisory**

Meeker argues that the district court violated his Sixth Amendment rights by increasing his sentence based on facts that were neither proved to a jury nor admitted by him. *See United States v. Booker*, 125 S. Ct. 738, 756 (2005) (holding that "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by the plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt"). Before the district court's upward departure, Meeker's sentencing range was 51 to 63 months. The court imposed a sentence of 84 months, however, after finding that the emotional trauma and the financial harm experienced by Meeker's victims were not adequately taken into account in the Guidelines calculations. Because the district court committed plain error in failing to treat the Sentencing Guidelines as advisory in determining Meeker's sentence, *United*

*States v. Barnett*, 398 F.3d 516, 527 (6th Cir. 2005), and because there is no "clear and specific evidence that the district court would not have, in any event, sentenced the defendant to a lower sentence under an advisory Guidelines regime," *Id.* at 529, we are compelled to vacate Meeker's sentence and remand for resentencing. But, "because the district court will need to consider the Guidelines-recommended sentences on remand, we take this opportunity to provide some guidance as to the proper interpretation of the Guidelines provisions whose application was challenged on appeal." *United States v. McDaniel*, 398 F.3d 540, 551 (6th Cir. 2005).

### 1.       *The district court's decision to depart upward from the Guidelines range*

Meeker contends that the district court's decision to depart upward from the Guidelines range was unsupported by the facts of his case. When determining whether a departure from the Guidelines range is warranted, a court should consider four questions: "1) What features of this case, potentially, take it outside the Guidelines' 'heartland' and make of it a special, or unusual, case? 2) Has the Commission forbidden departures based on those features? 3) If not, has the Commission encouraged departures based on those features? 4) If not, has the Commission discouraged departures based on those features?" *United States v. Koon*, 518 U.S. 81, 95 (1996).

In the present case, the district court cited *Koon* and then considered each of the four questions before determining that an upward departure in Meeker's sentence was appropriate. Meeker contends that the district court erred, however, in its analysis of the first question when it incorrectly determined that his was a "special case" unaccounted for in the Sentencing Guidelines. He claims that the two factors relied upon by the district court in concluding that an upward departure was warranted—the emotional trauma and the financial harm experienced by his victims—were adequately taken into account in the Guidelines calculations used to determine his offense level.

In considering Meeker's offense level, the district court took into account the extent of the loss resulting from his crime, his more than minimal planning, the multiple victims, and the abuse of his position of trust. But after having done so, the court concluded that these factors alone did not account for the severe emotional and financial harm suffered by the victims of Meeker's crime. The court reasoned that "it was not simply the amount of money that many victims lost, although in many cases, of course, that number alone was significant, but, rather, it was the fact that many of these victims had worked their entire life to earn the money necessary to live the type of retirement life they wished to live and that in many cases all of that money was now gone."

Meeker defrauded his close friends and loyal clients of millions of dollars over an eight-year period. As their personal accountant, Meeker was aware that for many of his victims he was in possession of all that they had saved for their retirement. He used this money, however, to gamble and to make risky personal investments. For the many people who had trusted him with all of their life savings, the result was financial devastation accompanied by severe emotional trauma.

Acknowledging that many crimes of mail fraud and interstate transmission of funds obtained by fraud will not have these severe consequences, the Sentencing Commission provided for upward departures in cases such as Meeker's, pursuant to § 2F1.1, Application Note 11. *See United States v. Benskin*, 926 F.2d 562, 566 (6th Cir. 1991) (finding that an upward departure was appropriate where the victims of a fraudulent investment scheme had "sustained severe financial harm in many instances, and also in many instances emotional harm" after losing all of their retirement funds).

### 2.       *The district court's upward departure of six offense levels*

The district court determined that an upward departure of six offense levels was appropriate in Meeker's case and sentenced him to 84 months of imprisonment. Meeker contends that this sentence was unreasonably harsh because it resulted in him being punished in the same manner as one who had defrauded investors of $320 million. This argument, however, is premised on the erroneous assumption that the length of Meeker's sentence was entirely dependent upon the amount of money taken from his victims. But Meeker's offense level before the upward departure was already elevated to reflect his extensive planning, his many victims, and his abuse of his position of trust. Because the amount of money taken was only one of several factors that increased Meeker's term of imprisonment, his arithmetic argument is unpersuasive.

The sentence imposed by the district court in the present case is also in line with sentences imposed for similar crimes within our circuit. Like Meeker, the defendant in *United States v. Benskin,* 926 F.2d 562, 563 (6th Cir. 1991), employed a fraudulent investment scheme that "preyed on private citizens, not corporate investors" and resulted in losses of over $3 million. Benskin received a 70-month sentence for mail fraud and a consecutive 60-month sentence for securities fraud. The PSR had recommended a Guidelines range of 27 to 33 months for the latter count, but the court departed upward and sentenced him to 60 months, nearly doubling the Guidelines range. *Id.* at 564 (sentencing the defendant to a total term of imprisonment of 130 months). Similarly, in *United States v. Dobish,* 102 F.3d 760 (6th Cir. 1996), the defendant employed a fraudulent investment scheme over a ten-year period to defraud victims, including members of his own family, of over $1 million dollars. The defendant pled guilty to mail fraud, and the PSR set a Guidelines range of 37 to 46 months in prison. *Id.* at 761-62. Finding that the defendant had inflicted "nonmonetary harm and serious psychological injury" in "jeopardizing the victims' solvency," the court departed upward four offense levels and sentenced the defendant to 60 months—the maximum sentence he could receive under the statute that he was charged with violating. *Id.* at 762.

Comparable sentences have been imposed by other circuits under similar circumstances. *See, e.g., United States v. Jarvis*, 258 F.3d 235, 240 (3d Cir. 2001) (upholding an upward departure under § 2F1.1, Application Note 11 where the defendant's "victims will be forced to live their retirement years in destitution"); *United States v. Hogan*, 121 F.3d 370, 373 (8th Cir. 1997) (affirming the district court's upward departure where the defendant's victims "were at or near retirement age, relying on small, fixed incomes in conjunction with their investments"). In contrast, Meeker does not cite any authority for his claim that the sentence he received was excessive. The district court may therefore wish to consider a similar upward departure on remand, with the knowledge that such a sentence is unlikely to run afoul of *Booker*'s reasonableness requirement. *Booker*, 125 S. Ct. at 766 (setting forth a "'reasonableness' standard of review" for sentences imposed under the advisory Guidelines system).

**D.     We decline to reach Meeker's claim of ineffective assistance of counsel**

Finally, Meeker asks us to remand his case for resentencing because he allegedly received the ineffective assistance of counsel. He points to the fact that his attorney failed to either object or request a continuance after the district court (1) allegedly provided inadequate notice of its contemplated upward departure, and (2) relied on the undisclosed victim letters. Meeker makes this request, however, with the knowledge that "[a]s a general rule, this court will not review claims of ineffective counsel that are raised for the first time on appeal. These claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on the issue." *United States v. Thomas*, 74 F.3d 701, 715 (6th Cir. 1996) (citations and quotation marks omitted).

Meeker argues, however, that his is one of those rare cases in which a claim of ineffective assistance of counsel may properly be raised on direct appeal because "there was no legitimate, strategic reason to fail to object under the circumstances" and that "the record is sufficient to allow review of defense counsel's" conduct. *See United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000) (finding that "[a]n exception exists, however, when the record is adequately developed to allow this Court to assess the merits of the issue"). But we find Meeker's argument unpersuasive because we can imagine several reasons why Meeker's trial counsel might have considered a request for a continuance or an objection to be strategically unwise.

Perhaps Meeker's attorney believed that he had received adequate notice and was fully prepared after receiving the district court's fax. Or maybe, in light of the cumulative nature of the letters discussed by the judge at sentencing, Meeker's attorney believed that even with a continuance he could not effectively rebut the evidence. The transcript from Meeker's sentencing hearing also reveals that Meeker was on the verge of losing his three-level downward adjustment for the acceptance of responsibility and demonstrating remorse for his crimes. His counsel may have believed that contesting the assertions of Meeker's victims would further jeopardize the availability of the downward adjustment.

Absent an evidentiary hearing, we cannot determine whether Meeker's counsel had a strategic justification for his actions at the sentencing hearing. *Compare United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997) (observing that "appellate courts are not equipped to resolve factual issues"), *with Hall*, 200 F.3d at 965 (reaching the defendant's claim of ineffective assistance of counsel on direct appeal where "the district court addressed the issue of dual representation several times, including a hearing requested by the prosecutor"). We therefore decline to reach Meeker's claim of ineffective assistance of counsel, and observe that he is free to raise the issue in a postconviction proceeding under 28 U.S.C. § 2255 where a more complete factual record may be developed.

## III.  CONCLUSION

For all of the reasons set forth above, we **VACATE** Meeker's sentence and **REMAND** the case for resentencing in light of *United States v. Booker*, 125 S. Ct. 738 (2005). As to the other errors raised by Meeker, we **AFFIRM** the judgment of the district court.