[Cite as *State v. Shackleford*, 2011-Ohio-4722.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                           :
                                        :       Appellate Case No. 24303
        Plaintiff-Appellee              :
                                        :       Trial Court Case No. 10-CR-2031
v.                                      :
                                        :       (Criminal Appeal from
LANCE SHACKLEFORD                       :        Common Pleas Court)
                                        :
        Defendant-Appellant             :
                                        :
                        . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2011.

. . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O.
Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorneys for Plaintiff-Appellee

J. ALLEN WILMES, Atty. Reg. #12093, 4428 North Dixie Drive, Dayton, Ohio 45414
        Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1} In September 2010, Lance Shackleford pleaded no contest to one count of

felonious assault causing serious physical harm, in violation of R.C. 2903.11(A)(1), for

stabbing a woman multiple times.[1] The trial court sentenced Shackleford to 5 years in prison.

{¶ 2} Shackleford appealed his conviction and now assigns two errors, one with respect to his plea and one with respect to his sentence.

**A. The Plea**

{¶ 3} The first assignment of error states: "THE TRIAL COURT FAILED TO DETERMINE THAT APPELLANT KNOWINGLY ENTERED HIS PLEA OF NO CONTEST."

{¶ 4} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle* (1996), 74 Ohio St.3d 525, 527. To be constitutional, a plea of guilty or no contest must be made by a defendant who understands that, by pleading, he waives certain rights, among them, the right to a jury trial. Crim.R. 11(C)(2)(c) instructs trial courts that, before accepting a plea of guilty or no contest, they must ensure that defendants understand they are waiving this right. The trial court here complied with this requirement. Its expanded  explanation of the right to jury trial was correct but the defendant argues that the explanation permits the inference that if just one juror were not convinced of the defendant's guilt, the defendant would be acquitted. More than likely, if one juror were not convinced, a mistrial would be declared and the defendant would be retried before a new jury. The question is whether the possibility that a defendant could draw an erroneous inference renders

---

[1]Shackleford was also charged with felonious assault with a deadly weapon, in violation of R.C. 2903.11(A)(2), but in exchange for his plea the state dismissed it.

Shackleford's no-contest plea unknowing.

{¶ 5} The trial court distinctly told Shackleford that if he pleaded no contest, he would waive his right to a jury trial. Then the court offered an expanded explanation of the right:

{¶ 6} "You're giving up the right to a trial by jury * * *. And in that trial, 12 jurors would decide whether or not you are guilty of either or both of these counts of felonious assault.

{¶ 7} "And at your trial, you would have the right to require the prosecutor to prove to all 12 members of the jury, convince all of them beyond a reasonable doubt that you are guilty before the jury would be able to find you guilty. In other words, if the prosecutor were to, say, to convince 11 of the jurors beyond a reasonable doubt but not all 12 jurors, then the jurors, then the jury could not convict you."   (Plea Tr. 9).

{¶ 8} Shackleford concedes that the trial court's explanation, on its face, is correct. See *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, at ¶35 (saying that Crim.R. 31(A) requires juror unanimity), and Crim.R. 23(B) (providing, in part, that "[i]n felony cases juries shall consist of twelve"). But he argues that the explanation is misleading. Shackleford asserts that a defendant would likely infer from this explanation–Shackleford does not say that he inferred this–that he would be acquitted if just one juror was not convinced of his guilt. In reality, though, Shackleford points out, it would lead not to acquittal but likely to a retrial before a new jury.

{¶ 9} However, the court was not required to give such a comprehensive explanation. It was not required to explain the concept of a unanimous verdict at all. To comply with

Crim.R. 11(C)(2)(c), a court need only refer to the right to jury trial and its waiver "in a manner reasonably intelligible to th[e] defendant." *State v. Ballard* (1981), 66 Ohio St.2d 473, 480. When the court explains more than is mandated by Crim. R. 11, it is not required to anticipate which inferences a defendant may draw from the otherwise correct information provided.

{¶ 10} In addition, we note that the focus of the rule is not so much on the substantive right itself but on waiver: the court must "[i]nform[] the defendant and determin[e] that the defendant understands that by the plea the defendant is waiving the right[] to jury trial." Crim.R. 11(C)(2)(c). What the defendant must know, then, is first that he has the right to a jury trial and second that by pleading he is intentionally relinquishing this right by choice.

{¶ 11} The trial court adequately informed Shackleford that he had a right to trial by jury and that he would waive this right if he pleaded no contest. That is all the court needed to do.

{¶ 12} The first assignment of error is overruled.

**B. The Sentence**

{¶ 13} "THE TRIAL COURT ABUSED ITS DISCRETION BY SUBJECTING APPELLANT TO A SENTENCE THAT IS 'UNREASONABLE' AND UNSUPPORTED BY THE EVIDENCE."

{¶ 14} At the sentencing hearing the trial court read part of a letter that the victim of Shackleford's crime had written the court in which the victim describes the crime's impact on her physically, psychologically, and emotionally. The court later cited the crime's impact on the victim, while explaining its sentencing decision. Shackleford asserts that before the

hearing neither he nor trial counsel saw the victim's letter, and that the court did not disclose the letter's full contents. Appellate counsel concedes that if the statements quoted by the trial court are valid, Shackleford lacks grounds to challenge his sentence. But, counsel says, he does not know if the statements are valid–if the victim actually wrote them and if the trial court accurately quoted them. Appellate counsel says that he has not seen the letter either, despite requests to the trial court. He asks this Court to review the statements and to reduce his sentence if we find credibility problems.

{¶ 15} Because Shackleford did not object to the trial court's use of the victim's letter at his sentencing hearing, we are concerned with only plain error. See Crim.R. 52(B); see, also, *State v. Smith*, 97 Ohio St.3d 367, 2002-Ohio-6659, at ¶64 (reviewing the use of victim-impact evidence, including a letter from the victim's father, under Crim.R. 52(B)'s plain-error standard because defendant failed to object). "Plain error does not exist unless it can be said that but for the error the outcome of the trial or proceeding would clearly have been different." *State v. Harris*, Montgomery App. No. 20841, 2005-Ohio-6835, at ¶7, citing *State v. Long* (1978), 53 Ohio St.2d 91. We note that at the sentencing hearing the trial court informed the defendant and his counsel that it had reviewed the presentence investigation, the defense sentencing memorandum, letters from the defendant's relatives, the prosecution sentencing memorandum and "* * * a letter from the victim, * * *." (Sentencing Tr. 2). Both the defendant and his counsel were then given an opportunity to respond, but chose not to do so. Moreover, because our review of the letter reveals that it is essentially a rewording of the victim impact portion of the presentence investigation, we cannot say that the letter alone resulted in a different outcome.

{¶ 16} At the sentencing hearing, the court recounted the victim's version of the events, as they are set forth in the presentence investigation report. According to the report, Shackleford stabbed the victim roughly eight times, in her right hand, right arm, left shoulder, left chest, left leg, and back. Then the court turned to the victim's letter:

{¶ 17} "Now, the impact of this on [the victim]. And here I read her letter to the court, portion of her letter. This is from [the victim]. She writes the court: 'On June 29, 2010, I had a life threatening act of violence occur to me. The attack will have a lasting memory in my mind.

{¶ 18} " 'That night I received eight stab wounds which included my neck, chest, back, left shoulder, left arm, left leg, right arm, right hand. My right hand has been most difficult for me with the possibility of never regaining full use. I also have nerve damage to the right side of my upper body.

{¶ 19} " 'Some of the simple day-to-day tasks which have been a struggle for me dealing with anxiety and not being able to be alone for long periods of time, the fear of something else happening to me or my family.' So that's in her letter."    (Sentencing Tr. 4-5).

{¶ 20} Finally, the court cited part of the prepared victim-impact statement:

{¶ 21} "And in the presentence investigation report under victim impact statement, it's reported that [the victim] did relay she has on-going physical therapy and psychological counseling and it says: [the victim] has been dealing with issues of anxiety and depression as a result. She stated she has trouble staying home alone for long periods of time. She is also due to [sic] limited periods to hold her son like she once did.

{¶ 22} "And it says: [the victim] has been seeing a therapist at Advanced Therapeutic

Services for psychological trauma as a result of this instant offense. So enormous impact upon her physical and mental state." (Sentencing Tr. 5-6).

{¶ 23} Later, when considering whether statutory factors were present that rendered Shackleford's crime "more serious," see R.C. 2929.12(B)(2), the court pertinently found "[t]hat the victim in this case suffered serious physical and psychological harm as a result of this offense." (Sentencing Tr. 7).

{¶ 24} We read the victim's letter to the court–the trial court's reading was accurate.[2] The information in the part read by the court–the explanation of the nature and extent of the physical, psychological, and emotional harm the victim suffered as a result of the crime–is properly included in a victim's statement. See R.C. 2930.13(C)(1). We note that this victim-impact information is also in the prepared victim-impact statement.

{¶ 25} Parenthetically, even if the letter had been fully disclosed to him before the sentencing hearing, Shackleford's ability to challenge its validity would have been limited. A defendant does not have the right to respond to a victim's statement unless the statement includes new material facts and the court relies on those facts. See R.C. 2930.14(B); see, also, *State v. Funderburg*, Montgomery App. No. 20450, 2005-Ohio-2235, at ¶11 ( "In proceedings ancillary to criminal convictions, such as sentencing * * *, courts have long held that it is

---

[2]The letter is not in the record, but we obtained a copy of it from the trial court. Preceding the part read by the court, the author identifies herself as Shackleford's victim and says that she wants to tell the court about the stabbing's impact on her life. Following the part read by the court, the victim says that Shackleford has not apologized to her and that she cannot forgive him until he does. The victim then says that Shackleford needs help and that she feels he is very dangerous. Finally, she tells the court that Shackleford should receive the maximum sentence, that she prays he will learn from his mistakes, and that she hopes he will never do this again.

proper for a trial court to consider evidence the defendant does not have an opportunity to confront.") (Citation omitted.). The Sixth Circuit Court of Appeals has pointed out that not having, before the sentencing hearing, emotional-impact evidence from a victim ultimately matters little because the defendant cannot really rebut the evidence. In a case in which victims sent letters to the court describing the emotional and financial impact of the defendant's fraud, the Sixth Circuit said, "There seems to be little that [defendant] could have done to effectively rebut the heart-wrenching descriptions of his victims' emotional distress that were recounted in many of the letters." *U.S. v. Meeker* (C.A.6,2005), 411 F.3d 736, 742. Therefore, said the court, even though the letters were not disclosed to the defendant, "[b]ecause this evidence was 'essentially irrebuttable,' even if it had been disclosed to him in advance of his sentencing hearing, [the defendant] can show no prejudice warranting correction under Rule 52(b) [the federal plain-error rule]." Id. See *State v. Cvijetinovic*, Cuyahoga App. No. 81534, 2003-Ohio-563, at ¶12 (saying that, "since the victim's statement did not include new material facts that would have affected [the defendant's] admitted guilt * * *, a cross-examination of the victim would have served no useful purpose whatsoever"). Consequently, we cannot envision how the result would have been different and therefore there is no plain error.

**{¶ 26}** The second assignment of error is overruled.

**{¶ 27}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . . .

FAIN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Johnna M. Shia
J. Allen Wilmes
Hon. Dennis J. Langer