[Cite as *State v. Fenderson*, 2023-Ohio-2903.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio

    Appellee

v.

Shakill Fenderson

    Appellant

Court of Appeals No. E-22-034

Trial Court No. 2021 CR 0317

**DECISION AND JUDGMENT**

Decided: August 18, 2023

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Derek A. Farmer, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** Defendant-appellant, Shakill Fenderson, appeals the July 5, 2022 judgment of the Erie County Court of Common Pleas, convicting him of involuntary manslaughter, with a repeat violent offender specification, and sentencing him to an aggregate prison term of a minimum of 21 years and a maximum of 26 and one-half years. For the following reasons, we affirm, in part, and reverse, in part.

## I.    Background

{¶ 2} On July 10, 2021, E.C. died after sustaining multiple gunshot wounds to his head and neck.  Shakill Fenderson was charged with his murder.  On August 6, 2021, he was indicted on charges of aggravated murder, a violation of R.C. 2903.01(A) and 2929.02(A), an unclassified felony, with a firearm specification under R.C. 2941.145(A) and a repeat violent offender specification, under R.C. 2941.149(A) (Count 1); tampering with evidence, a violation of R.C. 2921.12(A)(1) and (B), a third-degree felony (Count 2); and complicity in the commission of an offense, R.C. 2923.03(A)(2) and (F), a third-degree felony (Count 3).

{¶ 3} Fenderson entered a plea of guilty to amended Count 1, involuntary manslaughter, a violation of R.C. 2903.04(A) and (C), a first-degree felony, along with the repeat violent offender ("RVO") specification, in exchange for the dismissal of the remaining counts and specification.  The court found him guilty, ordered a presentence investigation report, and continued the matter for sentencing.

{¶ 4} At the sentencing hearing, on the conviction for involuntary manslaughter, the trial court ordered Fenderson to serve a minimum prison term of 11 years and a maximum prison term of 16 and one-half years.  It also found that the criteria were met for imposition of a sentence for a repeat violent offender.  It imposed an additional, consecutive ten-year prison term.  Fenderson's aggregate prison term totaled 21 years to 26 and one-half years.

2.

**{¶ 5}** Fenderson's conviction and sentence were memorialized in a judgment journalized on July 5, 2022. Fenderson appealed. He assigns the following errors for our review:

Assignment of Error #1: The trial court erred to the prejudice of Mr. Fenderson and in violation of the 14th Amendment to the United States Constitution and Art. I, Sec. 16 of the Ohio Constitution when it used a Pre-Sentence Investigation Report which contained unsubstantiated and false information in arriving at its sentence.

Assignment of Error #2: The trial court erred in violation of the 14th Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution in sentencing Mr. Fenderson above the minimum sentence on the involuntary manslaughter count where no predicate offense exists to support it.

Assignment of Error #3: The trial court violated Mr. Fenderson's rights under the Sixth Amendment by engaging in judicial fact-finding to increase his maximum sentence by 10 years on a RVO specification where the facts were not admitted to by him nor found by a jury.

Assignment of Error #4: Mr. Fenderson's right to due process under the 14th Amendment to the United States Constitution and Art. I, Sec. 16 of the Ohio Constitution was violated as a result of the trial court's

3.

consideration, at sentencing, of an undisclosed victim's correspondence to the court which was not provided to defense counsel.

Assignment of Error #5: Mr. Fenderson's sentence must be reversed because the S.B. 201 indeterminate sentencing scheme under which he was sentenced violates the Sixth Amendment and Article I, Section 5 of the Ohio Constitution because a defendant's imprisonment is dependent upon a factual finding not made by the jury beyond a reasonable doubt or admitted by the defendant.

Assignment of Error #6: The S.B. 201 indeterminate sentencing scheme under which Mr. Fenderson was sentenced violates separation of powers by delegating to the executive branch discretion to keep the defendant in prison beyond the judicially imposed presumptive minimum sentence.

Assignment of Error #7: The S.B. 201 indeterminate sentencing scheme violates substantive due process because it (1) fails to provide a defendant with adequate notice of what conduct can enable the ODRC to keep the defendant in prison beyond the presumptive minimum term; and (2) it allows the ODRC to keep a defendant in prison beyond the presumptive minimum sentence on the basis of prison housing and

classification decisions that need to be the result of any misconduct by the defendant.

Assignment of Error #8: The S.B. 201 indeterminate sentencing scheme under which Appellant was sentenced violates procedural due process by allowing for the extension of a prison sentence based on findings made at a hearing where the prisoner has no guaranteed right to be present, have counsel, confront witnesses, subpoena witnesses or to offer testimony of his own.

Assignment of Error #9: Appellant's sentence is contrary to law and must be reversed because the court failed to provide notice of the R.C. 2929.19(B)(2)(c) notifications at his sentencing.

## II. Law and Analysis

{¶ 6} In his first assignment of error, Fenderson argues that the trial court violated his right to due process when it considered his PSI at sentencing, which he claims contained false and unsubstantiated information. In his second assignment of error, he argues that the trial court violated his right to due process when it imposed a sentence above the minimum sentence because, he claims, there was no predicate offense to support his conviction for involuntary manslaughter. In his third assignment of error, he argues that the trial court violated his Sixth Amendment rights because it engaged in judicial fact-finding to increase his sentence by ten years on the RVO specification. In

his fourth assignment of error, he argues that the trial court violated his right to due process when it considered at sentencing undisclosed correspondence from the victim's family, which, he claims, was not provided to defense counsel. In his fifth through eighth assignments of error, Fenderson raises constitutional challenges to S.B. 201, the Reagan Tokes Law. And in his ninth assignment of error, he argues that the trial court erred by failing to give notifications required under R.C. 2929.19(B)(2)(c).

{¶ 7} We consider each of Fenderson's assignments in turn.

## A. Information Contained in the PSI

{¶ 8} In his first assignment of error, Fenderson argues that the PSI upon which the trial court relied when it sentenced him contained false, incomplete information and consisted only of police reports. He maintains that he was denied due process because the trial court refused to allow him to present evidence to demonstrate the falsity of the information. Although he acknowledges that under Ohio case law, courts may consider allegations of uncharged conduct contained in a PSI, he insists that this practice violates the principles established in *Apprendi v. New Jersey*, 530 U.S. 466 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 298, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). He also complains that because a court is not obligated to explain the reason for its sentence, a defendant cannot know what information the court specifically relied upon in imposing a sentence, and, therefore, cannot know for sure whether the court relied on inaccurate information. Finally, Fenderson insists that PSIs

6.

should be served on defense counsel so that counsel can effectively prepare and make a record of challenges to the PSI.

{¶ 9} Fenderson highlights specific examples that he claims demonstrate his concerns. For instance, he notes that one of the police reports references information from a witness who "heard through neighborhood gossip" that another witness told yet another witness that she believed Fenderson committed the crime because "she heard" that he and the victim "had a beef." That witness also mentioned that she heard that Fenderson had stolen a car last year. He suggests that this information led to a greater sentence than would otherwise have been imposed. Additionally, Fenderson complains that police reports did not include videos where the victim is seen taunting, stalking, and provoking him and his family members while brandishing firearms, and he insists that the PSI included inaccurate statements from a state trooper and a jailhouse informant. Fenderson also maintains that there were statements in the PSI indicating that he shot the victim in Detroit in a separate incident, which Fenderson denies.

{¶ 10} The state responds that Fenderson had an opportunity to correct any alleged inaccuracies in the PSI and to present his own version of the events, but he refused to participate in the presentence investigation process. It points out that Fenderson did, however, file a detailed sentencing memorandum, which the trial court considered. And the state insists that Fenderson was *not* entitled to call witnesses at sentencing. Rather, under R.C. 2951.03(B)(2), the court *in its discretion* may permit the defendant to

7.

introduce testimony or other information that relates to any alleged factual inaccuracy contained in the PSI. The state also emphasizes that although the trial court expressed its willingness to allow Fenderson to call Detective Costante to testify, he elected not to do so because the trial court did not also allow him to call Fenderson's mother and sister to testify at the hearing. Instead Fenderson proffered the information that their testimony would have shown.

{¶ 11} The state maintains that Fenderson has failed to establish that the trial court specifically relied on allegedly erroneous information in the PSI when it sentenced him in this matter. It stresses, in particular, that in sentencing Fenderson, the trial court assured Fenderson that it did not intend to take anything into account that happened in Michigan.

{¶ 12} Under R.C. 2951.03(B), "the court shall permit the defendant and the defendant's counsel to comment on the presentence investigation report and, *in its discretion*, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report." As such, we review the trial court's decision denying Fenderson's request "to introduce testimony or other information that relates to any alleged factual inaccuracy contained in the report" for an abuse of discretion. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An unreasonable decision is one that lacks sound reasoning to support the decision. *Hageman v. Bryan City Schools*,

8.

10th Dist. Franklin No. 17AP-742, 2019-Ohio-223, ¶ 13. "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard." *Id.* quoting *Porter, Wright, Morris & Arthur, LLP v. Frutta del Mondo, Ltd.*, 10th Dist. Franklin No. 08AP-69, 2008-Ohio-3567, ¶ 11. And an unconscionable decision is one "that affronts the sense of justice, decency, or reasonableness." *Id.*

{¶ 13} At his sentencing hearing, Fenderson's attorney expressed that he wanted to call Detective Costante and Fenderson's mother and sister to testify. The court said it would allow testimony from the detective, but would allow only statements from the family members. Fenderson chose not to call the detective because the court would not allow all his desired witnesses to testify. Instead, he proffered the information that would have been provided by the witnesses.

{¶ 14} Briefly stated, Fenderson indicated that his mother and sister would have testified (1) that E.C. threatened to kill them, and out of fear, they moved from Sandusky to Atlanta, Georgia; (2) E.C. had threatened other members of the community, so there were multiple people with motive to kill E.C; and (3) Fenderson was not in Sandusky when E.C. was killed. After proffering this information, counsel said: "So with that being said, I've made my record. I proffered what the witnesses were going to say * * *." Fenderson, although permitted to do so, specifically declined to question Detective Costante, but indicated that the detective would have testified that he interviewed a little girl who said that E.C. said he was going to shoot her dad. He also told the court that

Fenderson was not in Detroit when E.C. was shot there. The court told Fenderson that it was "not sentencing [him] for anything that happened in Michigan, and I know he's not convicted of that, so. I'm well aware."

{¶ 15} In essence, Fenderson sought to establish from his family that the victim had a history of threatening and intimidating people, including the Fenderson family. Although they were not permitted to testify, Fenderson's mother and sister included this information in the statements they made to the court. It was well-understood by the trial court that Fenderson's family felt threatened by the victim.

{¶ 16} Fenderson also sought to establish that he was not present at the time of the shooting and others had motive to harm the victim. These purported facts were no longer at issue given that Fenderson entered a plea of guilty to involuntary manslaughter. What's more, Fenderson successfully conveyed these points without examining witnesses at the sentencing hearing. Additionally, there were no inaccuracies in the PSI itself that Fenderson sought to challenge—it was the content of police reports attached to the PSI. Certainly, the trial court understood that the police reports merely chronicled efforts by the police to develop suspects, theories, and a chronology of events; undoubtedly, the trial court did not interpret every assertion contained in the reports as fact. And in any event, the state's eventual theory of the case was that Fenderson was "the architect" of the murder—not the gunman. Its theory was described at the sentencing hearing: "This was an execution-style murder. It was a hit. * * * [T]he evidence shows[] that about

10.

$3,000 was left on the lap of [E.C.] after he was shot seven times at close range, point blank range, seven times in the head, in the neck, and the shoulders." So the information Fenderson sought to introduce into the record—i.e., that he was not there when E.C. was shot—was not at odds with the state's theory.

{¶ 17} It is within the sentencing court's discretion whether to allow a defendant to introduce testimony relating to alleged factual inaccuracies contained in the PSI. The court allowed defense counsel to speak at length at the sentencing hearing. Fenderson opted not to call Detective Costante to testify even though the trial court said he could. Fenderson's mother and sister were permitted to speak at sentencing and were given the opportunity to fully express that they feared the victim. The trial court made clear that it was not taking into account any allegations that Fenderson had previously shot the victim in a separate incident in Detroit. The trial court undoubtedly understood that the information contained in the police reports was the work product of police trying to solve a homicide and not assertions of fact. And the only inaccuracies Fenderson identifies are not at odds with the state's version of events. We find no abuse of discretion in the trial court's decision denying him the opportunity to examine witnesses at the sentencing hearing.

{¶ 18} Finally, although Fenderson believes defendants should be permitted to receive a copy of the PSI instead of merely having an opportunity to review it then return it, this is not what Ohio law requires. *Compare* R.C. 2951.03(B)(1) and Fed.R.Crim.P.

11.

32(e)(2); *State v. Kennell*, 12th Dist. Clermont No. CA2015-01-002, 2015-Ohio-4817, ¶ 10. There is no suggestion here that Fenderson was not provided sufficient time to review the PSI to permit him to prepare for the sentencing hearing.

{¶ 19} We find Fenderson's first assignment of error not well-taken.

### B. Predicate Offense to Involuntary Manslaughter

{¶ 20} Fenderson entered a plea of guilty to involuntary manslaughter under R.C. 2903.04(A). R.C. 2903.04(A) provides that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." In his second assignment of error, Fenderson argues that the state failed to produce evidence of a predicate felony offense to support his conviction under the statute. He claims that a predicate felony offense is an element of the offense that had to be found by a jury or admitted to by the defendant. He denies that his guilty plea was an admission to the predicate felony offense since one was not identified. He also contends that because no predicate felony offense was identified, the trial court was required to impose the minimum sentence—i.e., three years. Fenderson questions whether the trial court considered the necessary factors set forth in R.C. 2929.11 and 2929.12, and he again complains that the trial court should have allowed him to present all the facts through witnesses' testimony, which, he maintains, would have negated the misinformation contained in the PSI and the state's sentencing memorandum.

12.

{¶ 21} The state responds that by the express terms of his plea, Fenderson admitted that he "cause[d] the death of another * * * as a proximate result of * * * committing or attempting to commit a felony." It points out that R.C. 2903.04(A) is a first-degree felony that carries an indefinite minimum sentence of three years to 11 years under R.C 2929.14(A)(1)(a), and it was within the trial court's discretion to impose a prison sentence within that statutory range. It emphasizes that the court was not required to make any finding of fact in order to sentence Fenderson to a term falling within the statutory range.

{¶ 22} Under Crim.R. 11(B)(1), a plea of guilty is a complete admission of the defendant's guilt. When a person enters a guilty plea, he waives the right to require the state to prove his guilt beyond a reasonable doubt at a trial. Crim.R. 11(C)(2)(c). "The guilty plea itself provides all the necessary proof of the elements of the offense and is sufficient evidence to support the conviction." *State v. Stroub*, 3d Dist. Wyandot No. 16-10-02, 2011-Ohio-169, ¶ 6, citing *State v. Fuller,* 12th Dist. Butler No. CA2008-09-240, 2009-Ohio-5068, ¶ 105.

{¶ 23} Here, when Fenderson entered a plea of guilty to involuntary manslaughter—and specifically, involuntary manslaughter under R.C. 2903.04(*A*)—he admitted the elements of that offense—i.e., he admitted that he committed an underlying felony that proximately caused the victim's death. Because he admitted the elements of the offense, the state was not required to "prove" at the sentencing hearing that Fenderson

13.

committed a felony that proximately caused E.C.'s death, nor was the court required to make any such finding. Fenderson suggests that without a predicate offense having been specifically identified, it is possible that the "unknown predicate offense is actually a misdemeanor" or "an offense that doesn't constitute a predicate" *or* that no underlying felony occurred at all. However, that is *not* possible here because by entering a guilty plea, Fenderson *admitted* that he committed a felony and that that felony proximately caused the victim's death.

{¶ 24} As to Fenderson's claim that the trial court was obligated to impose the minimum possible sentence here or find certain facts to support a greater sentence, this is simply wrong. Under R.C. 2929.14(A)(1), the trial court was authorized to impose a sentence of three, four, five, six, seven, eight, nine, ten, or 11 years. It was not obligated to impose the minimum possible sentence here, nor was it required to make any particular findings in order to impose a sentence greater than the minimum sentence. *State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, 912 N.E.2d 582, ¶ 41, quoting *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 100 (explaining that "'trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for maximum, consecutive, or more than the minimum sentences'"). No judicial-factfinding was required here, and none took place.

14.

{¶ 25} In support of his position that the court engaged in judicial fact-finding in imposing a sentence other than the minimum sentence, Fenderson relies on the U.S. Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99, 100, 186 L.Ed.2d 314, 133 S.Ct. 2151 (2013), and our decision in *State v. Mejia*, 2020-Ohio-6870, 164 N.E.3d 1177, ¶ 25 (6th Dist.). Neither of these cases is applicable here.

{¶ 26} In *Alleyne,* a jury convicted the defendant of using or carrying a firearm in relation to a crime of violence. The term of imprisonment for *using or carrying* a firearm in relation to a crime of violence was a minimum of five years. The term of imprisonment increased to a minimum of seven years if the firearm was *brandished*. And the term of imprisonment increased to a minimum of ten years if the firearm was *discharged*. The jury found that the defendant used or carried a firearm during and in relation to a crime of violence, but it made no finding that the firearm was brandished. Nevertheless, the presentence report recommended a seven-year sentence. The defendant argued that because the jury did not find beyond a reasonable doubt that he brandished the firearm, he was subject only to the five-year minimum. The district court concluded that "brandishing" was a sentencing factor that it could find by a preponderance of evidence. After determining that the evidence supported a finding of brandishing, it sentenced the defendant to seven years' imprisonment. The Court of Appeals affirmed.

{¶ 27} The U.S. Supreme Court acknowledged that the Sixth Amendment provides an accused the right to a trial by an impartial jury. "This right, in conjunction

15.

with the Due Process Clause, requires that each element of a crime be proved to the jury beyond a reasonable doubt." *Id.* at 105. The Court, therefore, addressed whether "brandishing" was an element of the crime that must be found by a jury or whether it could fairly be characterized as a sentencing factor for the court's consideration.

{¶ 28} The Court explained that a fact that increases the prescribed range of penalties to which a criminal defendant is exposed is an element of the crime, which a jury must find beyond a reasonable doubt. By extension, a fact that increases the range— i.e., either the floor or the ceiling—of a potential sentence produces a new penalty and is an element of the offense. As such, "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id.* at 114. The Court concluded that "because the fact of brandishing aggravates the legally prescribed range of allowable sentences, it constitutes an element of a separate, aggravated offense that must be found by the jury" beyond a reasonable doubt. *Id.* at 115.

{¶ 29} The Court took care to clarify that its holding—i.e., that a fact that increases a mandatory minimum sentence must be submitted to the jury—does not mean that a jury must find *any* fact that influences judicial discretion. Rather, it explained, "broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.* at 116.

16.

{¶ 30} *Alleyne* is wholly irrelevant to the facts presented here. Fenderson entered a plea of guilty to involuntary manslaughter under R.C. 2903.04(A). By doing so, he admitted each element of the offense, including that he committed a felony that proximately caused the victim's death. Under R.C. 2903.04(C), a violation of R.C. 2903.04(A) is a first-degree felony, regardless of the identity of the underlying felony. R.C. 2929.14(A)(1)(a) prescribes the allowable sentencing range. That range—the floor and ceiling—is not aggravated based on the identity of the underlying felony.

{¶ 31} We now turn to *Mejia*, 2020-Ohio-6870, 164 N.E.3d 1177. In *Mejia,* the defendant was charged with engaging in sexual conduct with a 12-year-old girl. He was indicted on three counts: (1) rape in violation of R.C. 2907.02(A)(1)(b) and (B) (Count 1), (2) rape in violation of R.C. 2907.02(A)(1)(b) and (B) with a specification that he "purposely compelled the victim to submit by force or threat of force" (Count 2), and (3) sexual battery in violation of R.C. 2907.03(A)(5) and (B) (Count 3). He entered a plea of guilty to Count 1 only. The trial court imposed a prison term of 25 years. It explained: "As far as the prison sentence, the Court has no option in this case. The prison sentence is mandatory, and on Count 1, the offense of rape being a felony of the first degree, the Court would impose a 25 year to life prison sentence that is mandatory." *Mejia at* ¶ 7.

{¶ 32} R.C. 2907.02(B) specifies that an offender convicted under (A)(1)(b) "shall be sentenced to a prison term or term of life imprisonment" under R.C. 2971.03. It also states that the court may impose upon the offender a term of life without parole under

R.C. 2971.03(A) if an offender has a previous conviction under (A)(1)(b), if the offender caused serious physical harm to the victim, or if the victim is less than ten years of age. Assuming the offense was committed after January 2, 2007, life without parole is not imposed, and R.C. 2971.03(A) is inapplicable, R.C. 2971.03(B) provides three possible indefinite sentences that may be imposed instead: 10 years to life, 15 years to life, or 25 years to life:

> (a) Except as otherwise required in division (B)(1)(b) or (c) of this section, *a minimum term of ten years* and a maximum term of life imprisonment.

> (b) If the victim was less than ten years of age, *a minimum of fifteen years* and a maximum of life imprisonment.

> (c) If the offender purposely compels the victim to submit by force or threat of force, or if the offender previously has been convicted of or pleaded guilty to violating division (A)(1)(b) of section 2907.02 of the Revised Code or to violating an existing or former law of this state, another state, or the United States that is substantially similar to division (A)(1)(b) of that section, or if the offender during or immediately after the commission of the offense caused serious physical harm to the victim, *a minimum term of twenty-five years* and a maximum of life imprisonment.

(Emphasis added.)

{¶ 33} We recognized that because the victim was 12 years old, R.C. 2971.03(B)(1)(b) was inapplicable. Thus, the trial court's imposition of a prison sentence of 25 years to life would be proper only if R.C. 2971.03(B)(1)(c) applied. Under that section, there are three ways that a 25-years to life sentence could be imposed: (1) use of force or threat of force in the commission of the offense; (2) a prior conviction for rape of a child under 13; or (3) serious physical harm caused to the victim of the offense. *Mejia* at ¶ 22, quoting *State v. Morris*, 5th Dist. Delaware No. 19 CAA 12 0069, 2020-Ohio-5361, ¶ 26. The state argued that "the use or threat of force" element was applicable.

{¶ 34} On appeal, we were left to resolve "whether a defendant who pleads guilty to rape under R.C. 2907.02(A)(1)(b) and (B) [may] be sentenced to 25 years to life under R.C. 2971.03(B)(1)(c) when the indictment fails to include a specification that force was used in the commission of the rape, the record is silent as to the issue of force, and the trial court does not make a determination that force was used in the commission of the rape at the time of accepting the plea or sentencing the defendant[.]" *Mejia* at ¶ 29. We looked to the Ohio Supreme Court's decision in *State v. Bowers,* 163 Ohio St.3d 28, 2020-Ohio-5167, 167 N.E.3d 947, for guidance.

{¶ 35} In *Bowers*, as in *Mejia,* the defendant pled guilty to rape under R.C. 2907.02(A)(1)(b) and (B). He was sentenced to 25 years to life in prison under R.C. 2971.03(B)(1)(c) even though force or threat of force was not specified in the indictment and the sentencing court made no factual finding that force or threat of force had been

used.  The First District reversed.  It found that the sentence was not authorized because none of the prerequisites under R.C. 2971.03(B)(1)(c) was present—i.e., the use or threat of force in the commission of the offense, a prior conviction for rape of a child under 13, or serious physical harm caused to the victim.  The Ohio Supreme Court affirmed the First District.  It concluded that "a sentence of 25 years to life under R.C. 2971.03(B)(1)(c) may not be imposed without a finding that the victim was compelled to submit by force or one of the other factors in R.C. 2971.03(B)(1)(c) applied.  The court rejected the state's argument that no express findings must be made under R.C. 2971.03(B)(1)(c) so long as there is evidence of force in the record.  *Bowers* at ¶ 24.

{¶ 36} Consistent with *Bowers,* we concluded that Mejia's sentence was contrary to law because neither the court nor the parties mentioned force at either the plea hearing or the sentencing hearing and the indictment was silent as to the issue of force under the count to which the defendant pled.  *Mejia* at ¶ 34.  Importantly, Count 2 contained a "force or threat of force" specification;  Count 1 did not.  The defendant entered a plea only to Count 1, therefore, he did not admit that he used force or threat of force.  We reversed and remanded the case for resentencing.

{¶ 37} Here, Fenderson entered a guilty plea to involuntary manslaughter under R.C. 2903.04(A).  By entering a plea of guilty, he admitted the elements of that offense.  As such, he admitted that he committed an underlying felony that proximately caused the

20.

victim's death. The potential sentence for a violation of R.C. 2903.04(A) does not vary based on which underlying felony was committed.

{¶ 38} Certainly, if Fenderson had not entered a plea of guilty and the matter had been tried to a jury, the state would have been required to prove that an underlying felony occurred (and that it caused the victim's death), which would necessarily have required it to identify the alleged felony. But the state was relieved of this duty when Fenderson voluntarily entered a guilty plea to the charge and *admitted* that he committed a felony that proximately caused E.C.'s death.

{¶ 39} Finally, Fenderson contends that "no basis exists to sentence a defendant to 11 years as opposed to 3 years if the predicate offense is unknown." He insists that without knowing the underlying predicate offense, a sentencing court "does not have sufficient facts to arrive at any sentence within the range above the minimum." Fenderson acknowledges that the trial court has discretion to impose a sentence using factors set forth in R.C. 2929.11 and 2929.12, but maintains that the factors are offense and offender specific and "depend on the nature of the felony predicate."

{¶ 40} In essence, Fenderson is challenging the length of his sentence—he believes he should have been sentenced to a minimum term of three years and a maximum term of four-and-a-half years. We review sentencing challenges under R.C. 2953.08(G)(2). The statute allows an appellate court to increase, reduce, or otherwise

21.

modify a sentence or vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2).

{¶ 41} R.C. 2929.11 and 2929.12 are not listed in the statutory provisions under R.C. 2953.08(G)(2)(a). *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649 ¶ 28. As such, an appellate court may not rely upon R.C. 2953.08(G)(2)(a) to "modify or vacate a sentence based on the lack of support in the record for the trial court's finding under R.C. 2929.11 and 2929.12." *Id.* at ¶ 29. Moreover, R.C. 2953.08(G)(2)(b) does not allow an appellate court to independently weigh the evidence and substitute its judgment for that of the trial court regarding the appropriate sentence under R.C. 2929.11 and 2929.12, or modify or vacate a sentence based on the lack of support in the record for the trial court's findings under those statutes. *Jones* at ¶ 39, 41-42; *see also State v. Toles*, 166 Ohio St.3d 397, 2021-Ohio-3531, 186 N.E.3d 784, ¶ 10 (Brunner, J., concurring) (R.C. 2953.08 "precludes second-guessing a sentence imposed

22.

by a trial court based on its weighing of the considerations in R.C. 2929.11 and 2929.12.").

{¶ 42} Importantly, the Ohio Supreme Court has made clear that "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *Jones* at ¶ 20. In fact, the trial court's consideration of the factors set forth in R.C. 2929.11 and 2929.12 is presumed even on a silent record. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1; *State v. Cyrus*, 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992).

{¶ 43} Here, we know that the trial court considered R.C. 2929.11 and 2929.12 because it said so on the record at the sentencing hearing, and reiterated it in its judgment entry. To the extent that Fenderson claims that the trial court lacked sufficient facts upon which to weigh these factors, we note that under R.C. 2929.19(B)(1)(a), when sentencing an offender, a trial court must consider the (1) the record; (2) any information presented at the hearing by the offender, the prosecuting attorney, the victim or the victim's representative, and any other person approved by the trial court; (3) the presentence investigation report; and (4) any victim impact statement. The trial court said that it considered this information. Consideration of this information supplied the trial court with the facts necessary to render an appropriate sentence under R.C. 2929.11 and 2929.12. Its sentence was within the allowable range permitted by R.C. 2929.14(A)(1). Fenderson's sentence was not contrary to law under R.C. 2953.08(G)(2)(b).

23.

{¶ 44} We find Fenderson's second assignment of error not well-taken.

### C. Repeat Violent Offender Specification

{¶ 45} In his third assignment of error, Fenderson argues that because he did not admit to any facts under R.C. 2929.14(B)(2)(a)(iv) or (v) and a jury did not make any findings under this statute, his additional ten-year sentence for the RVO specification was based on impermissible judicial fact-finding, in violation of his rights under the Sixth Amendment. He argues that under *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, "'any fact that increases the penalty for a crime beyond the prescribed statutory maximum,' except for the fact of a prior conviction, 'must be submitted to a jury, and proved beyond a reasonable doubt.'" He further claims that under *Blakely*, 542 U.S. at 298, 124 S.Ct. 2531, 159 L.Ed.2d 403, "when there is no jury trial because a defendant waived that right, the only way to establish facts that increase the penalty for a crime without violating the Sixth Amendment are when the defendant admits to them." He insists, therefore, that his ten-year sentence on the RVO specification must be vacated.

{¶ 46} In essence, the state does not disagree that the factors challenged by Fenderson require judicial fact-finding. It contends however that these factors— subdivisions (iv) and (v)—were excised from the statute by the Ohio Supreme Court in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, and findings under these factors are no longer required in order to impose a sentence on an RVO

24.

specification.  The state acknowledges that the legislature amended and renumbered the statute, leaving these factors undisturbed, however, it insists that the survival of these provisions does not mean that the legislature "reenacted" the language that had been declared unconstitutional.  Accordingly, the state contends, the trial court was not required to make the findings under R.C 2929.14(B)(2)(a)(iv) and (v) to support an additional sentence for RVO; the sentence could be imposed even without those findings.

{¶ 47} R.C. 2929.14(B)(2)(a) provides, in pertinent part, that "the court may impose on an offender * * * an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if *all* of the following criteria are met":

(i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

(ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole * * *.

(iii) The court imposes the longest prison term for the offense or the longest minimum prison term for the offense, whichever is applicable, that is not life imprisonment without parole.

(iv) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section and, if applicable, division (B)(1) or (3) of this section are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

(v) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section and, if applicable, division (B)(1) or (3) of this section are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

(Emphasis added.)

{¶ 48} In *State v. Oller*, 10th Dist. Franklin No. 16AP-429, 2017-Ohio-7575, the state claimed that the trial court was not required to make findings under R.C. 2929.14(B)(2)(a)(iv) and (v) in imposing a term of imprisonment on a repeat violent offender specification. It argued that in *Foster,* the Ohio Supreme Court found that R.C.

26.

2929.14(B)(2)(a)(iv) and (v) (then numbered R.C. 2929.14(D)(2)(b)(i) and (ii)) were unconstitutional insofar as they require impermissible judicial fact-finding, and, therefore, excised those provisions. The state maintained that although R.C. 2929.14 had been amended on multiple occasions since *Foster*, and although new iterations of that statute again included the (iv) and (v) factors, this did not evidence an intent by the legislature to "reenact" those provisions. Accordingly, the state maintained, the trial court could impose an RVO sentence without making those findings.

{¶ 49} The Tenth District agreed with the state that the inclusion of "preexisting language declared unconstitutional by the Supreme Court" that "survives its codified section's subsequent legislative amendment, is not tantamount to an intent by the legislature to reenact the language notwithstanding its declared unconstitutionality." *Oller* at ¶ 8. It also noted that later caselaw, including *Oregon v. Ice,* 555 U.S. 160, 163, 172 L.Ed.2d 517, 129 S.Ct. 711 (2009), and *State v. Hunter*, 123 Ohio St.3d 164, 2009-Ohio-4147, 915 N.E.2d 292, paragraph two of the syllabus, significantly diluted the effect of *Foster,* suggesting that "it is constitutionally permissible for a trial judge, rather than a jury, to consider an offender's offense, his or her prior record, and the factual circumstances necessary for sentencing consecutively which may support inferences concerning the seriousness of the offender's conduct and the danger the offender poses to the public." *Oller* at ¶ 9. It expressed its view that if the Ohio General Assembly were to specify an intent to do so, R.C. 2929.14(B)(2)(a)(iv) and (v) could be purposefully

27.

reenacted without compelling a sentencing court "to step beyond the permissible historical role of the sentencing court as recognized in *Ice* and *Hunter*." *Id.*

{¶ 50} Since *Oller,* the Tenth District has continued to find that an RVO sentence may be ordered without the trial court making *any* findings under R.C. 2929.14(B)(2)(a)(iv) and (v). *See State v. Ward*, 10th Dist. Franklin No. 19AP-266, 2020-Ohio-465, ¶ 33. The Seventh District has held similarly. *See State v. Lewis,* 7th Dist. Mahoning No. 18 MA 0059, 2019-Ohio-4081, ¶ 42-43.

{¶ 51} Consistent with these decisions, we conclude that findings under R.C. 2929.14(B)(2)(a)(iv) and (v) were unnecessary, and the term of imprisonment could be imposed based only on the factors set forth in R.C. 2929.14(B)(2)(a)(i) to (iii). Fenderson does not dispute that factors (i) to (iii) support an RVO sentence. Accordingly, we find no error in the trial court's imposition of the RVO sentence.

{¶ 52} We find Fenderson's third assignment of error not well-taken.

{¶ 53} Although we find Fenderson's third assignment of error not well-taken, and although not raised by the parties, we do note two errors in the sentencing judgment. On page two, the July 5, 2022 judgment mistakenly cites R.C. 2941.145(A) as the repeat violent offender specification; the correct statute is R.C. 2941.149(A). R.C. 2941.149(A) is the repeat violent offender specification and the statute to which Fenderson pled. On the third page, the judgment mistakenly cites R.C. 2929.14(D)(2)(b) as the sentencing provision relating to the repeat violent offender specification. This is a former version of

28.

the statute; the correct statute is now numbered R.C. 2929.14(B)(2)(a). The trial court should issue a nunc pro tunc entry to correct these two errors to cite to the proper statutes.

### D. Undisclosed Correspondence from the Victim

{¶ 54} In his fourth assignment of error, Fenderson argues that he was deprived of a fair sentencing proceeding in violation of his due process rights because the trial court relied on a letter from the victim's mother, which was not provided to defense counsel and was not read into the record. He claims that due process required that he be afforded the opportunity to rebut any materially false, derogatory information relied upon by the sentencing judge. He maintains that the only way to protect himself from being sentenced based upon false information was to provide him with notice and an opportunity to respond to the information upon which the sentencing court relied. And because Fenderson was not provided a copy of the letter, he claims that he was unable to rebut the statement or determine if it contained materially false information.

{¶ 55} The state responds that Fenderson failed to object or otherwise raise this issue before the trial court, therefore, he has waived all but plain error. It maintains that the trial court properly considered the letter from E.C.'s mother under R.C 2930.14(A), and was not required to give copies of the victim's mother's statement to Fenderson or his counsel. Furthermore, the state claims, even if the letter from E.C.'s mother had been disclosed to Fenderson, his ability to challenge its validity would have been limited because a defendant does not have the right to respond to a victim's statement unless it

29.

includes new material facts and the court relies on those facts. The state insists that nothing in the record indicates that the letter from E.C.'s mother included any new material facts, or that any such facts were relied upon by the trial court in sentencing Fenderson, and Fenderson has failed to demonstrate that his sentence clearly would have been different but for the trial court's consideration of the letter from E.C.'s mother.

{¶ 56} The state correctly observes that Fenderson did not object to the victim's mother's letter being provided to the court and not read aloud without allowing defense counsel to read it. We, therefore, review for plain error. Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.,* citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *Id.,* citing *Long* at paragraph two of the syllabus.

{¶ 57} In *State v. Shackleford*, 2d Dist. Montgomery No. 24303, 2011-Ohio-4722, the court at the sentencing hearing read part of a letter that the victim had written describing the crime's impact on her physically, psychologically, and emotionally. The court cited the crime's impact on the victim when explaining its sentencing decision. On appeal, the defendant complained that before the hearing, neither he nor trial counsel saw

the victim's letter, and the court did not disclose its full contents. Like Fenderson, the defendant did not object in the trial court, thus the appellate court applied a plain-error analysis.

{¶ 58} The Second District Court of Appeals obtained the letter from the trial court and reviewed its contents. It described that the letter was essentially a rewording of the victim impact portion of the PSI, which alone did not result in a different outcome. But the court went on to say that even if the letter had been fully disclosed to him before the sentencing hearing, the defendant's ability to challenge its validity would have been limited because "[a] defendant does not have the right to respond to a victim's statement unless the statement includes new material facts and the court relies on those facts." *Id.* at ¶ 25, citing R.C. 2930.14(B). It also cited to the Sixth Circuit Court of Appeals' decision in *U.S. v. Meeker*, 411 F.3d 736, 742 (6th Cir.2005), where the court pointed out that "not having, before the sentencing hearing, emotional-impact evidence from a victim ultimately matters little because the defendant cannot really rebut the evidence." *Shackleford* at ¶ 25, citing *Meeker* at 742. Therefore, the court concluded, "[b]ecause this evidence [is] essentially irrebuttable, even if it had been disclosed to him in advance of his sentencing hearing, [the defendant] can show no prejudice warranting correction under Rule 52(b) [the federal plain-error rule]." (Internal citations and quotations omitted.) *Id.* The Second District found no plain error.

31.

{¶ 59} Likewise, the record on appeal contains a copy of the letter from E.C.'s mother. In terms of facts, it contains no information different from that presented by the state at sentencing—that Fenderson was responsible for planning the murder. Similar to E.C.'s ex-fiancee's statements at sentencing, the letter also discusses the emotional impact the victim's death has had on his family, and especially his mother and daughters. The emotional impact on the family is "essentially irrebuttable." And no new facts were raised. Accordingly, we find that the failure to provide Fenderson a copy of the letter resulted in no prejudice to Fenderson. The outcome would not have been different had the letter been disclosed.

{¶ 60} We find Fenderson's fourth assignment of error not well-taken.

### E. Constitutionality of S.B. 201

{¶ 61} In his fifth through eighth assignments of error, Fenderson challenges the constitutionality of the sentencing scheme under which he was sentenced. He claims that S.B. 201—commonly referred to as the Reagan Tokes Law—violates the Sixth Amendment and Article I, Section 5 of the Ohio Constitution because a defendant's imprisonment is dependent upon a factual finding not made by the jury beyond a reasonable doubt or admitted by the defendant. He claims that it violates the doctrine of separation of powers because it delegates to the executive branch discretion to keep the defendant in prison beyond the judicially-imposed presumptive minimum sentence. He claims that it violates substantive due process because it fails to provide a defendant with

32.

adequate notice of what conduct can enable ODRC to keep the defendant in prison beyond the presumptive minimum term and allows ODRC to keep a defendant in prison beyond the presumptive minimum term on the basis of prison housing and classification decisions resulting from any misconduct by the defendant. And he claims that it violates procedural due process by allowing for the extension of a prison sentence based on findings made at a hearing where the prisoner has no guaranteed right to be present, have counsel, confront witnesses, subpoena witnesses, or offer testimony of his own.

{¶ 62} This court has addressed these challenges to the constitutionality of S.B. 201 on many occasions. In *State v. Bothuel,* 6th Dist. Lucas No. L-20-1053, 2022-Ohio-2606, ¶ 21-23, we found that S.B. 201 does not violate the constitutional right to a trial by jury because there are no circumstances under which ODRC may increase punishment beyond the maximum term permitted by statute or imposed by the sentencing court. *See also State v. Williams,* 6th Dist. Lucas No. L-21-1152, 2022-Ohio-2812, ¶ 14-16. In *State v. Gifford*, 6th Dist. Lucas No. L-21-1201, 2022-Ohio-1620, ¶ 23-36, we held that S.B. 201 does not violate principals of separation of powers because the trial court—not the executive branch—imposes both the minimum and maximum sentences. *See also State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2022-Ohio-2072, ¶ 7-20; and *Bothuel* at ¶ 7-20; *State v. Lamar,* 6th Dist. Wood No. WD-21-055, 2022-Ohio-2979, ¶ 125; *State v. Blanton,* 6th Dist. Lucas No. L-22-1225, 2023-Ohio-2242, ¶ 31. In *Williams* at ¶ 24-28, we rejected arguments similar to Fenderson's substantive due process challenge and held

33.

that S.B. 201 is not void for vagueness because standards for conduct are specified in the statute. And in *Stenson* at ¶ 22-34, we held that S.B. 201 does not, on its face, violate the constitutional right to due process because it cannot be said at this juncture that the Law cannot be applied constitutionally in any circumstances. *See also Bothuel* at ¶ 24-44; *State v. Eaton*, 2022-Ohio-2432, 192 N.E.3d 1236 (6th Dist.) (Mayle, J,, concurring) (where, on issue of due process, lead decision analogized additional term hearings to parole/probation *release* decisions and found that procedural safeguards afforded defendants under Reagan Tokes Law are sufficient to pass constitutional muster, and concurring decision analogized additional term hearings to parole/probation *revocation* decisions and found that while failing to set forth adequate process in the statute itself, Reagan Tokes Law is nevertheless capable of being enforced in a manner consistent with process due an offender); *Lamar* at ¶ 125 (adopting due process analysis set forth in *Eaton's* concurring decision); *Williams* at ¶ 23; *Blanton* at ¶ 31.

{¶ 63} The Ohio Supreme Court has now considered—and rejected—most of Fenderson's constitutional challenges to the Reagan Tokes Law. In *State v. Hacker*, Slip Opinion No. 2023-Ohio-2535, the Ohio Supreme Court held that the Reagan Tokes Law does not violate the separation of powers doctrine, does not violate the right to a jury trial, is not void for vagueness, and on its face, does not violate due process.

{¶ 64} First, the court rejected the position that the Reagan Tokes Law violates the separation-of-powers doctrine based on the authority granted to DRC—the executive

34.

branch—to maintain an offender's incarceration beyond the minimum prison term imposed by a trial court. It characterized the Reagan Tokes Law as "demonstrat[ing] the interplay among the three branches of government," but not "infring[ing] on the power of the courts." *Id.* at ¶ 13.

{¶ 65} The court explained the role of the three branches under S.B. 201:

[T]he legislative branch "define[s] crimes," "fixes the penalty," and "provide[s] such discipline and regulations for prisoners, not in conflict with the fundamental law, as the legislature deems best." [*State ex rel. Atty. Gen. v. Peters,* 43 Ohio St. 629, 647-648, 4 N.E. 81, 85 (1885).] Thus, with the Reagan Tokes Law, the General Assembly established indefinite sentencing for offenders convicted of eligible felonies and a scheme for offender discipline by the DRC. The judicial branch determines whether a person is guilty of an offense and, after a finding of guilt, imposes a prison sentence within the bounds established by the legislature. *Id.* at 647-648, 4 N.E. 81; *see also State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 136, 729 N.E.2d 359 (2000). And "[p]rison discipline is an exercise of executive power." *Id.*

*Hacker* at ¶ 15, quoting *Peters* at 647-648.

{¶ 66} The court emphasized that "[o]nce the trial court imposes minimum and maximum prison terms under R.C. 2929.14(A)(1)(a) or (2)(a), the sentence for the

offender has been set"—the DRC may maintain the offender's incarceration only if it determines that the presumption of release has been rebutted, and only within the bounds set by the trial court. *Id.* at ¶ 16. As such, it concluded, "[i]t does not impede the court's exercise of its judicial powers." *Id.*

{¶ 67} In reaching this conclusion, the Ohio Supreme Court relied on *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000), *superseded by statute on other grounds as stated in State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, where the court held that the postrelease-control statute did not violate the separation-of-powers doctrine or the right to Due Process even though it vested the parole board with authority to determine whether and how long an offender would be subject to postrelease control and authorized it to sanction offenders for violating the conditions of their postrelease control. In *Woods,* the court reasoned that the conditions of postrelease control were part of the sentence imposed by the trial court, "the power to determine the duration of postrelease control and the sanctions for an offender's violation of postrelease-control conditions was consistent with the authority that had been delegated to the APA in the past under a prior system of parole," and "the authority of the judiciary was not impeded by the APA's performance of its disciplinary function." *Hacker* at ¶ 22.

{¶ 68} In sum, the Ohio Supreme Court determined that the Reagan Tokes Law was analogous to that of the post-release control statute that it found constitutional in *Woods.* It stressed that under the Reagan Tokes Law, "[s]hould the DRC determine that

36.

the presumption of release is rebutted as the result of an offender's behavior during his incarceration, the additional time that the offender may have to serve is limited by the sentence that has already been imposed by the trial court."

{¶ 69} Second, the court disagreed that R.C. 2967.271 violates the right to a jury trial because it authorizes the DRC to maintain an offender's incarceration beyond the minimum prison term imposed by the trial court without any jury findings to support the extended incarceration. It acknowledged that under *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Hacker* at ¶ 27, quoting *Apprendi* at 490. But it emphasized that under S.B. 201, the *trial court* has the discretion to sentence him to any minimum sentence within the appropriate range, and the maximum sentence is calculated based on the minimum sentence. It concluded that "[b]ecause no determination by the DRC regarding [the offender's] behavior while in prison will change the range of penalties prescribed by the legislature and imposed by the trial court, the right to a jury trial is not implicated." *Id.* at ¶ 28.

{¶ 70} Third, the court concluded that S.B. 201 is not void for vagueness. It found that the Law gives adequate notice of what is prohibited conduct—"'infractions or violations [that] demonstrate that the offender has not been rehabilitated.'" *Hacker* at ¶ 31, quoting R.C. 2967.271(C)(1)(a). It explained that "[t]he infractions or violations that

37.

may 'demonstrate that the offender has not been rehabilitated' are those 'that involve[] compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or * * * a violation of law that was not prosecuted.'" *Id.* at ¶ 32, quoting R.C. 2967.271(C)(1)(a). The Ohio Supreme Court disagreed that the DRC is given "unfettered discretion" to determine whether certain infractions warrant maintaining an offender's incarceration. It observed that the DRC is authorized to make similar determinations in a variety of other contexts, thus, it reasoned, "[a]llowing the DRC some discretion does not, on its own, make the Reagan Tokes Law unconstitutionally vague." *Id.* at ¶ 34.

{¶ 71} Finally, the Ohio Supreme Court concluded that the Reagan Tokes Law does not, on its face, violate the right to due process. As an initial matter, it recognized that offenders have a liberty interest in not being held beyond the minimum prison term imposed by a trial court. It explained that because "DRC's discretion to maintain an offender's incarceration beyond the minimum prison term imposed by the trial court is curtailed by R.C. 2967.271(B)," there is a "presumption that an offender will be released at the completion of his minimum sentence," which "can be rebutted based on the offender's behavior while incarcerated," thereby giving rise to an "interest that entitles offenders to due-process protection." *Id.* at ¶ 36, citing R.C. 2967.271(C). The court

38.

acknowledged that "[b]ecause a liberty interest is at stake," "due process requires a hearing before offenders are deprived of that interest." *Id.* at ¶ 37.

{¶ 72} The court observed that R.C. 2967.271(C) provides for a hearing. But while the offenders argued that these hearings are inadequate, the court stressed that their challenge was a facial challenge to the law itself—"'the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.'" *Id.* at ¶ 38, quoting *United States v. Salerno*, 481 U.S. 739, 745, 95 L.Ed.2d 697, 107 S.Ct. 2095 (1987). It explained that "[t]he fact that the law 'might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.'" *Id.,* quoting *id.* The Ohio Supreme Court refused to speculate about hypothetical or imaginary scenarios where the law may be applied in a manner that might violate an offender's due process rights. It did, however, leave open the possibility that "the application of the DRC's policies made under R.C. 2967.271(C) would be subject to review as as-applied challenges, should the facts of a specific case so warrant." *Id.* at ¶ 39.

{¶ 73} For the reasons explained in our various decisions, and as recently pronounced by the Ohio Supreme Court in *Hacker*, we find Fenderson's fifth, sixth, seventh, and eighth assignments of error not well-taken.

39.

### F.  R.C. 2929.19(B)(2)(c) Notifications

{¶ 74} In his ninth assignment of error, Fenderson argues that the trial court erred by failing to advise him of the R.C. 2929.19(B)(2)(c) notifications at his sentencing hearing.  He claims that the R.C. 2929.19(B)(2)(c) notifications are mandatory, and a failure to provide the notifications at sentencing renders his sentence void and requires remand for resentencing.

{¶ 75} The state emphasizes that the trial court provided the required notifications at the plea hearing, they were included in the judgment entry of plea, and Fenderson signed a notice of having been advised under R.C. 2929.19(B)(2)(c)(i)-(iv).  It concedes, however, that the trial court failed to restate these notifications at the sentencing hearing, and it agrees that this matter must be remanded to permit the trial court to provide the mandatory notifications.

{¶ 76} Under R.C. 2929.19(B)(2)(c), if the sentencing court imposes a non-life felony indefinite prison term, it must notify the offender of all of the following:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in [R.C.] 2967.271 * * *, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a

40.

hearing held under [R.C.] 2967.271 * * *, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in [R.C. 2929.19](B)(2)(c)(ii) * * *, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in [R.C.] 2967.271 * * *;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in [R.C. 2929.19](B)(2)(c)(i) and (ii) * * * more than one time, subject to the limitation specified in [R.C.] 2967.271 * * *;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

{¶ 77} Ohio courts agree that a trial court errs where it fails to make these mandatory advisements at the sentencing hearing. Because the trial court failed to make

these advisements at the sentencing hearing, we remand this matter to the trial court "for the limited purpose of permitting the sentencing court to provide the mandatory notifications." *State v. Kelly*, 1st Dist. Hamilton No. C-200013, 2022-Ohio-3628, ¶ 9.

{¶ 78} Accordingly, we find Fenderson's ninth assignment of error well-taken.

## III.    Conclusion

{¶ 79} The trial court did not abuse its discretion in denying Fenderson's request to elicit testimony at the sentencing hearing concerning alleged inaccuracies contained in the PSI.  The court allowed him to call the detective to testify—he chose not to.  It allowed Fenderson's mother and sister to provide statements; those statements included the information Fenderson's attorney proffered at the hearing.  And Fenderson had an opportunity to provide information concerning his contention that the PSI contained inaccurate information.  We, therefore, find Fenderson's first assignment of error not well-taken.

{¶ 80} The state was relieved of its duty to identify and prove a predicate offense when Fenderson entered a guilty plea under R.C. 2903.04(A).  By entering this plea, Fenderson admitted that he committed a felony that caused the victim's death; the trial court did not need to find any facts to impose a sentence within the range permitted by R.C. 2929.14(A)(1).  We, therefore, find Fenderson's second assignment of error not well-taken.

42.

{¶ 81} Following Fenderson's plea to the repeat violent offender specification, the trial court was not required to make findings under R.C. 2929.14(B)(2)(a)(iv) and (v) in order to impose a repeat violent offender sentence. We, therefore, find Fenderson's third assignment of error not well-taken.

{¶ 82} The trial court did not commit plain error when it considered a letter from the victim's mother, which it did not provide to Fenderson. The letter did not allege new facts. It was also irrebuttable to the extent that it described the impact the victim's death had on the victim's family. Disclosure of the letter would not have changed the outcome of the proceedings. We, therefore, find Fenderson's fourth assignment of error not well-taken.

{¶ 83} S.B. 201 does not on its face violate the right to a trial by jury, principles of separation of powers, substantive due process, or procedural due process. We, therefore, find Fenderson's fifth through eighth assignments of error not well-taken.

{¶ 84} The trial court erred when it failed to make the notifications required by R.C. 2929.19(B)(2)(c). We, therefore, find Fenderson's ninth assignment of error well-taken. We remand this matter to the trial court for the limited purpose of permitting the sentencing court to provide these mandatory notifications.

{¶ 85} On remand, the trial court should also enter a nunc pro tunc entry correcting two errors in the July 5, 2022 Judgment Entry. On page two, the judgment mistakenly cites R.C. 2941.145(A) as the repeat violent offender specification; the correct

43.

statute is R.C. 2941.149(A). R.C. 2941.149(A) is the repeat violent offender specification and the statute to which Fenderson pled. On the third page, the judgment mistakenly cites R.C. 2929.14(D)(2)(b) as the sentencing provision relating to the repeat violent offender specification. This is a former version of the statute; the correct statute is now numbered R.C. 2929.14(B)(2)(a).

{¶ 86} We affirm the judgment of the Erie County Court of Common Pleas, in part, and reverse in part. The matter is remanded to the trial court for the limited purpose of permitting the sentencing court to provide the notifications required by R.C. 2929.19(B)(2)(c) and to correct the two errors noted in the paragraph above. Fenderson and the state are ordered to share the costs of this appeal under App.R. 24.

> Judgment affirmed, in part,
> and reversed, in part,
> and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.   _____
              JUDGE

Myron C. Duhart, P.J.

Charles E. Sulek, J.   _____
CONCUR.           JUDGE

           _____
              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.